UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEONTA DEPREE JOHNSON,

                Plaintiff,

v.

UNKNOWN GUST,

                Defendant.

_____/

Case No. 1:19-cv-682

Hon. Robert J. Jonker

## REPORT AND RECOMMENDATION

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by plaintiff Deonta Johnson), a state prisoner in the custody of the Michigan Department of Corrections (MDOC).   This matter is now before the Court on defendant Gust's combined motion to dismiss for failure to state a claim upon which relief can be granted and for summary judgment (ECF No. 13).

### I.      Background

The alleged incidents occurred at the Earnest C. Brooks Correctional Facility (LRF). *See* Amend. Compl. (ECF No. 4, PageID.28). The MDOC's website identifies Johnson as a biological male.   *See* Exh (ECF No. 14-2).   However, Johnson identifies as female throughout the complaint.   For consistency, Johnson will be referred to as "her" or "she" in this report.   In this regard, Johnson alleged that because of her Gender Dysphoria Disorder (GDD) and "in accordance with Prison Rape Elimination Act (PREA) standards, she is accommodated with single-occupancy living and access to toilet and shower facilities with relative privacy." Amend.

1

Compl. at PageID.30.   *See Does 8-10 v. Snyder*, 945 F.3d 951, 955-56 (6th Cir. 2019) ("Congress enacted PREA with the purpose of implementing standards and policies to prevent prison rape and to 'protect the Eighth Amendment rights of Federal, State, and local prisoners.' 34 U.S.C. § 30302 (formerly 42 U.S.C. § 15602).").

## II.    Johnson's Amended Complaint

Johnson claims that defendant Corrections Officer (C/O) Lester Gust engaged in acts of unlawful conduct in April and May, 2019.   Johnson's claims commence on April 4, 2019, when C/O Gust observed Johnson propose to her fiancée by kneeling on one knee and offering a homemade engagement ring. Amend. Compl. at PageID.31; Order (ECF No. 36).   According to Johnson, Gust observed this interaction and "began making homophobic comments and calling Plaintiff derogatory names."   Amend. Compl. at PageID.31.   Johnson called the PREA Hotline to report sexual and intimidating harassment against Gust.   *Id*.

Several days later, three prison officials (non-parties Inspector Page, Inspector Johnson, and Captain Scrivens) interviewed Johnson about the PREA complaint, at which time she explained Gust's remarks in graphic detail.   *Id*.   These officials advised Johnson that there was not enough evidence to support a claim because the complaint boiled down to Johnson's word against Gust's word.   *Id*. at PageID.32. However, the officials advised Johnson "that C/O Gust would be contacted and instructed to cease his unprofessional conduct."   *Id*.

"Several days later," Johnson encountered C/O Gust in the prison dining hall, at which time Gust called plaintiff "a snitch" and "threatened Plaintiff stating that Plaintiff was going to regret it."   *Id*. at PageID.32.

2

On May 27, 2019 at approximately 11:34 a.m., Johnson was in an "out of bounds" area and "a facility sergeant instructed C/O Farber to inform Plaintiff that because she was within the 'out of bounds' area that she had to leave the yard and return to her housing unit." *Id*. As C/O Farber escorted Johnson back to the housing unit, C/O Gust began walking toward Farber and told Johnson, "Walk faster faggot." *Id*. at PageID.32-33. Johnson responded to Gust stating that she was going to have her family call the prison officials because nothing had been done about her complaint against Gust for sexual harassment. *Id*. at PageID.33.

Plaintiff alleged that Gust assaulted her:

13. C/O Gust then stated, "I can make you walk faster". C/O Gust, without provocation or justification began using force by grabbing Plaintiff's arm very tightly and aggressively pushing Plaintiff forwards; forcing Plaintiff to walk at a faster pace.

14. Upon passing through the housing unit gate entrance, C/O Gust shoved Plaintiff forwards while releasing Plaintiff's arm stating, "This is what you wanted." Plaintiff exclaimed, "I can't believe you just did that."

15. Upon hearing this, C/O Gust without provocation or justification physically assaulted Plaintiff by grabbing Plaintiff's wrist, twisting it and with great force, pulled Plaintiff's wrist behind her back while at the same time pulling Plaintiffs arm in an outward and upward position from behind. While still positioned in this very painful position, C/O Gust escorted Plaintiff into her housing unit.

16. Plaintiff protested in agony and pleaded for C/O Gust to stop his assault because he was hurting Plaintiff. C/O Gust merely retorted, "This is what you wanted!"

PageID.33-34. After this encounter, Johnson contacted her unit officer and sought immediate medical attention. *Id*. at PageID.34. Healthcare personnel treated her for a "sprained/strained injury to the wrist." *Id*.

Johnson has set forth three counts for relief.   In Count I, Johnson claims that C/O Gust used excessive force in violation of the Eighth Amendment.   *Id*. at PageID.35-36. In this regard, Johnson alleged that

> A reasonably well-trained officer in Defendant's position would know that grabbing Plaintiff's arm, shoving Plaintiff forward, twisting Plaintiff's wrist with great force and strength while simultaneously forcing Plaintiff's arm behind her back in an outward and upward position, which resulted in injury to Plaintiff's person, was unreasonable under the circumstances.

*Id*. at PageID.35.

In Count II, Johnson claims that C/O Gust retaliated against her in violation of the First Amendment.   *Id*. at PageID.36-38.   In this regard, Johnson alleged that

> The adverse actions taken against Plaintiff as a result of her filing of PREA Complaints, grievances, and having family members contact prison officials to address C/O Gust's abusive conduct violated her right to freedom of speech and to petition the government for redress of grievances as guaranteed by the First Amendment of the United States Constitution and 42 U.S.C. § 1983.

*Id*. at PageID.36-37.

Finally, in Count III, Johnson claims that C/O Gust committed a civil assault and battery. *Id*. at PageID.38-39. In this regard, Johnson alleged that Gust acted intentionally when he directed physical force against Johnson, that Johnson did not consent to "this forceful touching," and that "throughout the unjustified, unlawful, and unnecessary encounter [Johnson] was in fear and was apprehensive that Defendant would touch her."   *Id*. at PageID.38. Johnson seeks total damages of $1,045,000.00. *Id*. at PageID.35-39.

4

### III.      C/O Gust's Motion to dismiss

### A.      The Court's initial screening

Gust seeks to dismiss Johnson's Eighth Amendment claim pursuant to Fed. R. Civ.

P. 12(b)(6) on the ground that it fails to state a claim for relief.  This Court discourages such

motions, because it screens the adequacy of *pro se* prisoner complaints prior to ordering service.[1]

Here, Gust's counsel was aware that all of Johnson's claims had survived screening, having been

notified of this fact in the Court's order referring the case to the *pro se* prisoner civil rights litigation

early mediation program:

> Plaintiff, a prisoner in the custody of the Michigan Department of
> Corrections, filed a civil rights complaint pursuant to 42 U.S.C. § 1983. The
> complaint survived screening under 28 U.S.C. § 1915A and 42 U.S.C. § 1997e(c)[.]

Order (ECF No. 6).

> The Court's Order Lifting Stay and for Service again advised Gust that,

The Court previously reviewed the complaint under 28 U.S.C. §§ 1915(e) and
1915A and 42 U.S.C. § 1997e(c), to determine whether it was frivolous, malicious,
failed to state a claim upon which relief could be granted or sought monetary relief
against a defendant that was immune from such relief.

---

[1] Defendant's counsel filed a motion to dismiss before the Court entered its standard case management order in prisoner civil rights cases.   Had counsel followed the normal protocol in prisoner civil rights cases and waited for the Court to issue its standard case management order, counsel would have been advised that:

> The Court has conducted an initial review of the complaint pursuant to 28 U.S.C. §1915(e), §1915A and 42 U.S.C. § 1997e(c), to determine whether it is frivolous, malicious, fails to state a claim upon which relief can be granted or seeks monetary relief against a defendant that is immune from such relief.  Upon initial review, the Court concludes that the complaint is not subject to dismissal for any of the reasons listed above. In reaching this conclusion, the court has determined that the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (*quoting Twombly*, 550 U.S. at 570). Accordingly, the Court discourages the filing of motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

Order (ECF No. 12).   Nevertheless, C/O Gust has filed a motion seeking to dismiss Johnson's

Eighth Amendment claim (*see* ECF No. 14, PageID.77-81). Given that the Court has screened the

complaint, Gust's motion essentially seeks reconsideration of the Court's order to serve the

complaint.   However, Gust did not structure the motion as one for reconsideration.[2]   Under these

circumstances, the Court will address Gust's filing as a motion to dismiss rather than as a motion

for reconsideration.

### B.    Legal standard

A complaint may be dismissed for failure to state a claim if it fails to give the

defendants a fair notice of the claim and the grounds upon which it rests.   *Bell Atlantic*

*Corporation v. Twombly*, 550 U.S. 544, 555 (2007).

> [A] complaint must contain sufficient factual matter, accepted as true, to
> state a claim to relief that is plausible on its face.   A claim has facial plausibility
> when the plaintiff pleads factual content that allows the court to draw the reasonable
> inference that the defendant is liable for the misconduct alleged.   The plausibility
> standard is not akin to a probability requirement, but it asks for more than a sheer
> possibility that a defendant has acted unlawfully.   Where a complaint pleads facts
> that are merely consistent with a defendant's liability, it stops short of the line
> between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted).

In making this determination, the complaint must be construed in the light most

favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Churchs*

*Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).   "When a court is presented with a Rule 12(b)(6)

motion, it may consider the Complaint and any exhibits attached thereto, public records, items

---

[2] The Court's local rule regarding motions for reconsideration, W.D. Mich. LCivR 7.4(a), provides that as a general rule, "motions for reconsideration which merely present the same issues ruled upon by the court shall not be granted" and that "[t]he movant shall not only demonstrate a palpable defect by which the court and the parties have been misled, but also show that a different disposition of the case must result from a correction thereof."

appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long

as they are referred to in the Complaint and are central to the claims contained therein." *Bassett*

*v. National Collegiate Athletic Association*, 528 F.3d 426, 430 (6th Cir. 2008).]]

      **C.**    **Johnson's Eighth Amendment claim**

      **1.**    **Legal Standard**

      Johnson seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of

action for individuals who are deprived of any rights, privileges, or immunities secured by the

Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem*,

*Ohio*, 378 F.3d 566, 576 (6th Cir. 2004).   To state a § 1983 claim, a plaintiff must allege two

elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and

(2) that the defendant deprived him of this federal right under color of law.   *Jones v. Duncan*, 840

F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

      Here, Johnson's amended complaint claims that C/O Gust used excessive force in

violation of the Eighth Amendment.   The Supreme Court has held that "the unnecessary and

wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth

Amendment." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992).   "The contemporary standards of

civilized decency that currently prevail in society determine whether conditions of confinement

are cruel and unusual." *Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004), citing *Rhodes v.*

*Chapman*, 452 U.S. 337, 346 (1981).   A viable Eighth Amendment claim consists of an objective

and a subjective component.   *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).   A court considering

a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively

harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind.  *Hudson*, 503 U.S. at 8.

The objective component requires the infliction of serious pain or failure to treat a serious medical condition.  *Id.* at 8-9.   In excessive force cases, the core judicial inquiry is "not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (internal quotation marks omitted).

> When prison officials maliciously and sadistically use force to cause harm   .   .   . contemporary standards of decency always are violated   .   .   .   whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.

*Id*. (internal quotation marks omitted) (citing *Hudson*, 503 U.S. at 9).   While the seriousness of the prisoner's injuries are not dispositive, "[t]he Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety.  *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "It is obduracy and wantonness, not

8

inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause."   *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

### 2.   *De minimis* use of force

Gust seeks dismissal because the incident involved only the *de minimis* use of force. Gust contends that he merely escorted Johnson back to the housing unit after she was loitering in an out-of-bounds area and that "[t]o say that this type of *de minimis* use of force rises to the level of an Eighth Amendment violation would be to open the floodgates to additional prisoner lawsuits, and would only encourage prisoners to litigate every touching that occurs in a custodial setting." Defendant's Brief (ECF No. 14, PageID.78, 83).   Gust's contention ignores the allegations in Johnson's complaint.   Johnson did not allege that C/O Gust merely "escorted" her back to the housing unit.   Johnson alleged that, "without provocation or justification" C/O Gust grabbed her wrist "twisting it with great force," "pulled Plaintiff's wrist behind her back" in a "very painful position," and then escorted her to the housing unit.   Amend. Compl. at PageID.33.   Immediately after the incident, "Plaintiff's wrist hurt so bade [sic] to the point where she could not move it" and that "Healthcare personnel subsequently treated Plaintiff for a sprained/strained injury to the wrist."   *Id*. at PageID.33-34.   Plaintiff's allegations, if true, involve more than a *de minimis* use of force.   Accordingly, Gust's motion to dismiss should be denied with respect to this claim.

### 3.   Verbal sexual harassment

C/O Gust also claims that "[t]o the extent Johnson argues that Gust's alleged comments about her sexual orientation or gender identity violated the Eighth Amendment, this argument is without merit."   Defendant's Brief at PageID.79.   As discussed, Johnson's complaint includes three counts: excessive force in violation of the Eighth Amendment; retaliation in

violation of the First Amendment; and assault and battery in violation of state law.   Johnson did not include a count that Gust made derogatory comments in violation of the Eighth Amendment. Accordingly, Gust's motion to dismiss should be denied with respect to this claim.

### D.     Qualified immunity

C/O Gust also seeks to dismiss Johnson's Eighth Amendment claim on the basis of qualified immunity.   Under the affirmative defense of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).   "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right.   .   .   Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law."  *Mullenix v. Luna*, 577 U.S. 7, 11-12 (2015) (internal quotation marks omitted).   Thus, the doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Carroll v. Carman*, 574 U.S. 13, 17 (2014).

"To survive the motion to dismiss on qualified-immunity grounds, the plaintiff must allege facts that "plausibly mak[e] out a claim that the defendant's conduct violated a constitutional right that was clearly established law at the time, such that a reasonable officer would have known that his conduct violated that right."  *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016).   The Sixth Circuit applies a "two-tiered" inquiry in reviewing the dismissal of a claim on qualified immunity.   *Id*.

> The first step is to determine if the facts alleged make out a violation of a
> constitutional right. The second is to ask if the right at issue was "clearly
> established" when the event occurred such that a reasonable officer would have
> known that his conduct violated it.

*Id*. (internal quotation marks omitted).   "When a defendant raises a defense of qualified immunity,
the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified
immunity."   *Livermore ex rel Rohm v. Lubelan*, 476 F.3d 397, 403 (6th Cir. 2007).

First, Gust contends that Johnson has not shown an Eighth Amendment violation
because Gust used only a *de minimis* amount of force.   *See* Defendant's Brief (ECF No. 14,
PageID.82).   The Court has rejected this contention.

Second, Gust contends that plaintiff had no clearly established right in this case
with respect to the *de minimis* force issue, stating that "Johnson has not offered any case where a
court held that a prison official violated the Eighth Amendment by escorting a prisoner for a valid
reason such as being out-of-bounds, resulting in a minor wrist injury."   Defendant's Brief at
PageID.82.   Gust's qualified immunity argument repeats his erroneous contention that there was
no Eighth Amendment violation because the incident involved only a *de minimis* use of force.
*See id*. at PageID.83 ("[t]o say that this type of *de minimis* use of force rises to the level of an
Eighth Amendment violation would be to open the floodgates to additional prisoner lawsuits, and
would only encourage prisoners to litigate every touching that occurs in a custodial setting.").   As
discussed, Johnson's allegations, if true, involve more than a *de minimis* use of force.
Accordingly, Gust's motion to dismiss on the basis of qualified immunity should be denied.

IV.     **C/O Gust's motion for summary judgment**

A.     **Legal standard for summary judgment**

C/O Gust seeks summary judgment because plaintiff did not exhaust her administrative remedies with respect to the First Amendment retaliation claim prior to filing this lawsuit.   "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.   Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).    "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."   *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B.    Failure to Exhaust

### 1.    Exhaustion requirement

The PLRA provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies.  *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001).  A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741.  One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court.  This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).  In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.  *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'"  *Jones*, 549 U.S. at 218.

### 2.    MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective March 18, 2019).  A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control.  *Id.* at ¶ Q.  If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within

five business days after the grievant attempted to resolve the issue with appropriate staff.   *Id.* at

¶¶ Q and S.   The Policy Directive provides the following directions for completing grievance

forms:

> The issues should be stated briefly but concisely.   Information provided is to be
> limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where,
> why, how).   Dates, times, places and names of all those involved in the issue being
> grieved are to be included.

*Id.* at ¶ S (emphasis in original).   The prisoner must send the Step I grievance to the appropriate

grievance coordinator.   *Id.* at ¶ W.   If the prisoner is dissatisfied with the Step I response, or does

not receive a timely response, he must request the appropriate form and send it to the Step II

Grievance Coordinator.   *Id.* at ¶ DD.   Finally, if a prisoner is dissatisfied with the Step II

response, or does not receive a timely response, he must send a completed Step III grievance, using

the appropriate form, to the Grievance Section.   *Id.* at ¶ HH.

### 3.    Discussion

C/O Gust contends that Johnson failed to exhaust her First Amendment retaliation

claim, stating in pertinent part:

> It is not disputed that Johnson exhausted an Eighth Amendment claim and
> an Assault and Battery claim related to the May 27, 2019, use-of-force incident in
> Grievance ID No. LRF-2019-05-0558-26A. However, she did not exhaust her
> retaliation claim related to the April 2019 incident in this grievance.

Defendant's Brief (ECF No. 14, PageID.71).[3]

---

[3] Because the alleged act of retaliation occurred in May 2019, a grievance related to retaliation was subject to Policy
Directive 03.02.130 (effective March 18, 2019).   The Court notes that Gust's brief cites an outdated version of the Policy
Directive, *i.e.*, Policy Directive 03.02.130 (effective July 9, 2007). *See* Defendant's Brief (ECF No. 14,
PageID.72-73).   However, Gust did attach the correct version of the Policy Directive as Exhibit B (ECF No. 14-3).

Based on Johnson's grievance filing history, Gust points out that the only grievance filed by Johnson which could be relevant to this lawsuit is LRF-2019-05-0558-26A ("558"). *See id*. at PageID.73-74; MDOC Prisoner Step III Grievance Report (ECF No. 14-4).[4]   Gust contends that "Johnson was required to allege in her prison grievances that Gust's use of force against her was in retaliation for her earlier report to the PREA hotline," that she failed to do so, and that the grievance is not exhausted because Johnson "failed to put prison officials on notice of the alleged retaliation."   Defendant's Brief at PageID.74.   As the court stated in *Bell v. Konteh*, 450 F.3d 651 (6th Cir. 2006):

> In describing the alleged mistreatment or misconduct, . . . we would not require a prisoner's grievance to allege a specific legal theory or facts that correspond to all the required elements of a particular legal theory. Rather, it is sufficient for a court to find that a prisoner's [grievance] gave prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint.

*Bell*, 450 F.3d at 654 (6th Cir. 2006), *quoting Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003).

Here, Johnson directed grievance 558 at Gust for use of excessive force on May 27, 2019.   In Johnson's words:

> C/O Gus came up to me & the C/O Faber and said walked Faster Faggot; I said I file a PREA on you Before (via Inspector Johnson/Page) He said I can make U walk faster.   He begun to use force by yanking my arm & pulling me @ his speed & push me into the gate. Then said this wat U wanted so I said Im having family call up here.   He grab my wrist then Twisted & started making me walk to the inside of unit. Per Policy staff has to protect me from violence & give me reasonable safety not use excessive force.   My 8th Amendments were violated & I was treated Cruel & Unusual Punishment Deshoney v. Walbaco County Dept of Social Service. Health Care were notified via telephone/kite for treatment of pain.   I take hormones so I am already expereence muscle spasms weakness.   Please Review Camera 5/27/2019 @ 11:45 A.M. Violation of 03.03.140(L)(H)4.

---

[4]  The grievance file appears to contain two copies of the Step I grievance, one illegible (PageID.113) and one legible (PageID.114).   *See* Grievance 558 (ECF No. 14-4, PageID.113-114).

Grievance 558 at PageID.114.

Johnson's grievance referred to excessive force, cruel and unusual punishment, and a violation of the Eighth Amendment. While Johnson made a reference to PREA, this was not sufficient to give prison officials fair notice that she was also grieving a First Amendment retaliation claim based on the April 4, 2019 call to the PREA hotline. In this regard, Johnson's reference to Policy Directive 03.03.140(L)(H)4 appears misplaced. *See* Policy Directive 03.03.140 ("Prison Rape Elimination Act (PREA) and Prohibited Sexual Conduct Involving Prisoners") (eff. April 24, 2017) (ECF No. 14-5, PageID.117-118). Policy Directive 03.03.140 ¶ L states that "Allegations of prisoner sexual assaults against staff shall be reported to the Michigan State Police (MSP) or other appropriate law enforcement agency for investigation," while ¶ H.4. defines a specific type of staff-on-prisoner sexual misconduct, *i.e.*, "Contact between the mouth and any body part where the employee has the intent to abuse, arouse or gratify sexual desire." *See* Policy Directive 03.03.140 ¶¶ L and H. Neither of these paragraphs are applicable to the incident which occurred on May 27, 2019.

In her response, Johnson appears to claim that she exhausted a retaliation claim based upon the April 4, 2019 call to the PREA hotline and her reference to PREA and Policy Directive 03.03.140. in grievance 558. *See* Johnson's Response (ECF No. 16, PageID.128). Gust does not dispute that Johnson called the PREA hotline. Rather, Gust states that Johnson is conflating two separate grievance processes available to her, *i.e.*, "Grievance No. LRF-19-05-0558-26A does not count as a PREA grievance because the PREA grievance process is a separate and distinct process from the ordinary grievance process." Defendant's Reply (ECF No. 20,

16

PageID.185). Gust points out that Policy Directive 03.03.140 provides a two-step grievance process for prisoners to exhaust claims of sexual abuse:

> The PREA Grievance process is a two-step process allowing prisoners to grieve regarding allegations of sexual abuse. A prisoner may file a PREA Grievance at Step I, and may appeal the Step I decision to Step II. The Step II decision shall serve as the Department's final decision on the merits of the PREA Grievance. *Issues filed by prisoners regarding sexual abuse, as defined in this policy, serve to exhaust the prisoner's administrative remedies only when filed through both steps of the PREA grievance process.* PREA Grievances alleging sexual abuse shall not be denied or rejected.

Policy Directive 03.03.140 ¶ EE (emphasis added).

MDOC Policy Directive 03.03.140 limits the PREA grievance process to the administrative exhaustion of sex abuse claims:

> *Any PREA Grievance containing issues other than sexual abuse shall be denied and returned to the prisoner with instructions to submit the grievance in accordance with PD 03.02.130 "Prisoner/Parolee Grievances."* Any PREA grievance containing multiple issues, which include sexual abuse and non-sexual abuse issues, shall be processed in accordance with this policy in order to address the allegations of sexual abuse only. The prisoner shall be notified in the PREA Grievance response that s/he must submit a new grievance in accordance with PD 03.02.130 to address any concerns not related to sexual abuse.

Policy Directive 03.03.140 ¶ II (emphasis added).

The record reflects that Johnson did not follow the PREA requirements because she attempted to grieve the PREA claim in grievance 558 and her purported Step II PREA grievance was not acknowledged by any MDOC official. *See* Defendant's Reply (ECF No. 20, PageID.185-187); PREA Appeal Form (ECF No. 17-8, PageID.162). Furthermore, even if Johnson *had* exhausted a PREA grievance, she could not use the PREA grievance procedure to exhaust a First Amendment retaliation claim. *See* Policy Directive 03.03.140 ¶¶ EE and II.

For all of these reasons, the Court concludes that Johnson has failed to properly exhaust a First Amendment retaliation claim.   *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, Gust should be granted summary judgment on this claim.[5]

### V.      **Johnson's state law claims**

### A.      **Supplemental jurisdiction**

Gust contends that the Court should decline to exercise supplemental jurisdiction over Johnson's state law claim for assault and battery because all of the federal claims have been dismissed.   *See* 28 U.S.C. § 1367(c)(3) (stating that "(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . .(3) the district court has dismissed all claims over which it has original jurisdiction[.]").   *See* Defendant's Brief (ECF No. 14, PageID.83-87). Gust's request should be denied because this Court has concluded that Johnson's Eighth Amendment claim survives.

### B.      **Governmental immunity**

Gust also contends that he is entitled to governmental immunity to the assault and battery claim under Michigan's Government Tort Liability Act (GTLA), M.C.L. § 691.1407.   *See* Defendant's Brief (ECF No. 14, PageID.83-87).   The Sixth Circuit addressed the application of the GTLA in *Bletz v. Gribble*, 641 F.3d 743 (6th Cir. 2011), stating in pertinent part:

> In *Odom v. Wayne County*, 482 Mich. 459, 760 N.W.2d 217, 228 (2008), the Michigan Supreme Court stated that the proper method for determining whether governmental immunity applies to intentional torts, such as assault and battery, is to apply the test set forth in *Ross v. Consumers Power Co.*, 420 Mich. 567, 363

---

[5]  In reaching this determination, the Court notes that Johnson did not have an opportunity to conduct discovery limited to the issue of exhaustion as allowed in the standard case management order (which was not issued in this case). Here, Johnson does not contest the contents of the administrative record and has not advised the Court that she cannot respond due to lack of discovery.   Under the circumstances of this case, it is unclear to the Court as to what discovery Johnson would perform; the administrative record speaks for itself.

N.W.2d 641, 647 (1984).   Under the *Ross* test, an employee enjoys a right to immunity if (1) the employee undertook the challenged acts during the course of his employment and was acting, or reasonably believed that he was acting, within the scope of his authority; (2) the employee undertook the challenged acts in good faith or without malice; and (3) the acts were discretionary, rather than ministerial, in nature.   *Odom*, 760 N.W.2d at 228. Defendants bear the burden of establishing their entitlement to immunity from plaintiff's state-law claims. *Id*. at 227–28.

*Bletz v. Gribble*, 641 F.3d 743, 757 (6th Cir. 2011).   The court explained:

> Unlike qualified immunity under federal law, which uses an objective standard, "[t]he good-faith element of the *Ross* test is subjective in nature. It protects a defendant's honest belief and good-faith conduct with the cloak of immunity while exposing to liability a defendant who acts with malicious intent." [*Odom*, 760 N.W.2d] at 229. Therefore, "[t]he proponent of individual immunity must establish that he acted without malice." *Id*. at 225.  *See also Miller v. Sanilac Cnty.*, 606 F.3d 240, 254 (6th Cir. 2010) (applying Michigan law) ("The only factor at issue here is 'good faith,' which is defined as 'without malice.'").

*Id*.

"Entitlement to immunity under the *Ross* test is an affirmative defense that must be proven by the governmental actor."  *Kreipke v. Wayne State University*, 807 F.3d 768, 784 (6th Cir. 2015).   However, where such an affirmative defense appears clearly on the face of the complaint, a court may dismiss a complaint under Rule 12(b)(6) for failure to state a claim.   *Id*. In addressing a motion to dismiss, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true.   *See Morgan*, 829 F.2d at 12.

Gust states that he meets the first and third elements of the *Ross* test because "[t]here is no dispute that he was acting within the scope of his authority as a corrections officer for the MDOC at the time he escorted Johnson."   Defendant's Brief at PageID.86-87.   Gust contends that the only issue potentially in dispute is whether he "undertook the challenged acts in good faith or without malice."   As discussed, Johnson alleged that Gust physically assaulted her "without provocation or justification."   Amend. Compl. at PageID.33.   Johnson alleged that

19

"Plaintiff protested in agony and pleaded for C/O Gust to stop his assault because he was hurting Plaintiff. C/O Gust merely retorted, 'This is what you wanted!'" *Id.* at PageID.34.   Based on plaintiff's allegations, the Court can infer that Gust's actions were not taken in good faith or without malice.   Accordingly, Gust's motion for governmental immunity should be denied.[6]

## VI.     Recommendation

For the reasons set forth above, I respectfully recommend that defendant C/O Gust's combined motion to dismiss and for summary judgment (ECF No. 13) be resolved as follows: Gust's motion to dismiss the Eighth Amendment claim (Count I) be **DENIED**; Gust's motion for summary judgment as to the First Amendment retaliation claim (Count II) be **GRANTED**; and Gust's motion to dismiss the state law assault and battery claim (Count III) be **DENIED**.

I further recommend that this case proceed on plaintiff's Counts I and III.

Dated:   February 26, 2021                                     /s/ Ray Kent
                                                                         RAY KENT
                                                                         United States Magistrate Judge

**ANY OBJECTIONS** to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.   All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).   Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.   *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

---

[6]  In reaching this determination, the Court expresses no opinion as to whether Gust met the first and third elements of the *Ross* test.